In the Supreme Court of Georgia

Decided: February 8, 2016

S15A1457. TARPLEY v. THE STATE.

HUNSTEIN, Justice.

Appellant Hoke Smith Tarpley was convicted of malice murder in connection with the shooting death of his uncle, Earnest Claude Estes, and sentenced to life imprisonment. Tarpley now appeals, challenging the admissibility of certain evidence, the trial court's jury instructions, and the manner in which the trial court handled certain reciprocal discovery violations. Finding no error, we affirm.[1]

Viewed in a light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. In the early-morning hours of February

[1]In June 2006, a Laurens County grand jury returned an indictment charging Tarpley with malice murder and felony murder. A trial was held June 17-20, 2008, and a jury found Tarpley guilty of both offenses; he was sentenced to life imprisonment for malice murder. Tarpley, through trial counsel, filed a motion for new trial on July 8, 2008, which was later amended on August 22, 2011, and April 21, 2014. Following an August 2014 hearing, the trial court denied the amended motion on October 21, 2014, and Tarpley filed his notice of appeal on October 31, 2014. This appeal was docketed to the September 2015 term of this Court and was thereafter submitted for decision on the briefs.

9, 2006, deputies from the Laurens County Sheriff's Department responded to a report of a shooting in Caldwell, Georgia. Upon arrival, deputies discovered Estes slumped over on a couch, dead from gunshot wounds. Family members led the deputies to Tarpley – whose residence was situated on an adjacent lot – who provided a statement to the officers. Tarpley advised the deputies that he and Estes had been at Estes' residence watching television and drinking alcohol when Estes "snapped" and physically assaulted him. Tarpley reported that Estes choked him and placed a cocked gun against his head; he explained that, once he was able to leave Estes' residence, he retreated to his own home where he retrieved a 12-gauge shotgun, and he returned to Estes' property where he shot Estes twice through the front-yard window. The jury heard evidence, however, that Estes' revolver was found unloaded and holstered on a coffee table and that, although Tarpley appeared to have some type of facial injury, there was no sign of a struggle at Estes' residence; likewise, the jury also learned that, despite Tarpley's contention that Estes saw and threatened Tarpley through the window, the poor lighting outside of Estes' residence would have hindered Estes from seeing Tarpley in the front yard.

1. Though Tarpley has not enumerated the general grounds, we have

2

concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that he was guilty of malice murder. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Tarpley first argues that the trial court erred in refusing to allow the introduction of evidence of prior specific acts of violence by the victim. Generally, the character of a victim is neither relevant nor admissible in a murder trial. See Austin v. State, 268 Ga. 602 (2) (492 SE2d 212) (1997). However, this court in Chandler v. State, 261 Ga. 402 (405 SE2d 669) (1991),[2] concluded that such evidence may be admissible when a defendant claims justification. To permit the admission of such evidence, Tarpley was, at a minimum, required to (1) follow the procedural requirements for introducing the evidence, (2) establish the existence of prior violent acts by competent evidence, and (3) make a prima facie showing of justification. See Laster v. State, 268 Ga. 172 (2) (486 SE2d 153) (1997). See also Uniform Superior Court Rule 31.6

___

[2] This Court has previously noted that Chandler was superseded by the new evidence code. See Hendrix v. State, 298 Ga. 60, 62, n.2 (779 SE2d 322) (2015). Tarpley's trial, however, was conducted years before the effective date of the new evidence code.

3

(B). "To make this prima facie showing, the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself." Laster, 268 Ga. at 174. Here, the trial court concluded that Tarpley failed to make a prima facie case of justification; we review that decision for abuse of discretion. See Smith v. State, 292 Ga. 316 (2) (737 SE2d 677) (2013).

Even viewing the evidence in a light most favorable to Tarpley, he left Estes' residence, walked to his own residence – covering approximately 132 yards – and then made the return trip with a shotgun, after which he shot Estes through a window. Though Tarpley testified that he was pursued and shot at by Estes after he left Estes' residence, Tarpley acknowledges that, after he returned to his own residence to retrieve the shotgun, he was unsure of Estes' location and *sought him out*. While Tarpley contends that "his home was not a place of safety" because he believed that he was still in danger when he arrived home, his argument is premised on Chapman v. State, 258 Ga. 214 (367 SE2d 541) (1988), a "battered woman's syndrome" case which is clearly inapposite here. The trial court's conclusion that Tarpley had failed to establish a prima facie case of justification is supported by the record, and the trial court did not abuse

4

its discretion here. See Shackelford v. State, 270 Ga. App. 12, 14-15 (1) (606 SE2d 22) (2004) (trial court did not abuse its discretion in excluding evidence of prior violent acts by the victim where the evidence showed that, while the victim was the initial aggressor, the defendant escaped from the altercation, proceeded to the garage to retrieve a board, and then bludgeoned the victim to death with that board).

3. Tarpley next challenges the trial court's refusal to charge on voluntary manslaughter, the trial court's decision to use the word "imminent" in its no-duty-to-retreat charge, and the trial court's failure to give a missing-evidence charge. Tarpley's arguments are without merit.

(a) Tarpley argues that, in denying his request for a jury instruction on voluntary manslaughter, the trial court relied only on the "obvious" interpretations of voluntary manslaughter. See OCGA § 16-5-2. According to Tarpley, the trial court failed to recognize that "[f]ear of some danger can be sufficient provocation to excite the passion necessary for voluntary manslaughter." Miller v. State, 223 Ga. App. 311, 311 (477 SE2d 430) (1996). As this Court has explained before, however,

> [w]hile jury charges on self-defense and voluntary manslaughter are

5

not mutually exclusive, the provocation necessary to support a charge of voluntary manslaughter is different from that which will support a claim of self-defense. The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted.

Browning v. State, 283 Ga. 528, 529-530 (2) (a) (661 SE2d 552) (2008). "A charge on voluntary manslaughter is not available to a defendant whose own statement unequivocally shows that he was not angered or impassioned when a killing occurred, and when the other evidence does not show otherwise." (Footnote omitted.) Worthem v. State, 270 Ga. 469, 471(2) (509 SE2d 922) (1999). Tarpley's statements to police and trial testimony do not indicate that he killed Estes out of some irresistible passion – whatever the source of that passion – but, instead, that the killing occurred because Tarpley was "very afraid" of Estes that night; further, there is no other evidence indicating that the shooting here arose out of passion rather than fear. The trial court correctly concluded that there was no evidence to support a charge of voluntary manslaughter. See Jackson v. State, 282 Ga. 494, 498 (4) (651 SE2d 702) (2007) (holding that no voluntary manslaughter charge was warranted where "'at best, [the] evidence shows that [Appellant] was attempting to repel an

6

attack, not that he was so angered that he reacted passionately'" (citation omitted)).

(b) Tarpley next argues that the trial court erred in adding the word "imminent" to the no-duty-to-retreat jury instruction. Tarpley contends that the word "imminent" is not found in the pattern jury instructions and that, by adding the word imminent to the instruction, the trial court narrowed the scope of justification law "beyond anything established by precedent." He also argues that the word "imminent" makes the instruction vague and could cause confusion. We disagree. "A trial court's refusal to give a jury charge in the exact language requested by a defendant is not error if the charge given by the trial court substantially covers the applicable principles of law." Keita v. State, 285 Ga. 767, 771 (4) (684 SE2d 233) (2009). As Tarpley acknowledges, the no-duty-to-retreat instruction used by the trial court here was from the Pattern Jury Instructions prepared by the Council of Superior Court Judges; while Tarpley would have apparently preferred that the instruction not include the word "imminent," the instruction accurately stated the legal principle at issue and was unlikely to cause confusion. There was no error.

(c) Finally, Tarpley asserts that a "missing evidence charge was warranted

7

in this case, as the investigation in this case ignored and failed to produce numerous pieces of evidence." However, aside from specifying what evidence and investigative avenues Tarpley contends that law enforcement missed, he fails to support this jury-instruction claim with argument or citation of authority. "We will not consider such bare bones claims," and this argument is deemed abandoned. See Zamora v. State, 291 Ga. 512, 516 (6) (731 SE2d 658) (2012).

4. Tarpley next contends that the trial court abused its discretion by refusing to exclude the medical examiner as a witness when the State violated the reciprocal discovery requirements by failing to include the medical examiner's name on a witness list and by failing to provide the defense with a copy of the autopsy report. See OCGA § 17-16-4. Tarpley asserts that the untimely disclosure of the medical examiner as a witness prevented him from learning that the medical examiner "had pending forgery charges and had been disciplined for inappropriate conduct by the [Georgia Bureau of Investigation]" and using that information to impeach the medical examiner. He also asserts that, because he did not receive a timely copy of the autopsy report, he did not learn until halfway through trial that swabbings from Estes hands had not been tested for gunshot residue.

"When the State fails to comply with reciprocal discovery requirements, the trial court may, pursuant to OCGA § 17-16-6, 'order the state to permit the discovery or inspection, ... grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed.'" Brown v. State, 281 Ga. App. 557, 559 (636 SE2d 717) (2006). Exclusion of evidence "is a particularly harsh sanction and should be imposed only where there is a showing of prejudice to the defense and bad faith by the State." (Citations omitted.) Higuera–Hernandez v. State, 289 Ga. 553, 557-558 (3) (714 SE2d 236) (2011). We review the trial court's decision here for abuse of discretion. See Bryant v. State, 288 Ga. 876 (9) (b) (708 SE2d 362) (2011).

The trial court here remedied the discovery violation in the following ways: Tarpley was allowed to interview the medical examiner; the trial court continued the trial to allow the gunshot residue test to be completed; once it was determined that there was gunshot residue on Estes' hands, Tarpley was permitted to interview the individual who performed the gunshot-residue test and call him as a witness; and the parties were permitted to conduct an additional voir dire of the jury to address the two new witnesses. While Tarpley contends on appeal that the trial court should have excluded the testimony of the

9

medical examiner, Tarpley has failed to establish prejudice sufficient to warrant such a harsh sanction; notably, Tarpley acknowledged that he killed Estes, and he has failed to demonstrate that his inability to impeach the medical examiner hindered his defense. Likewise, Tarpley takes issue with the fact that the gunshot-residue expert testified that the residue on Estes' hands could have come from the shots that killed Estes; while Tarpley contends that, with additional time, he could have found an alternative expert to counter this "preposterous notion," he points to no evidence supporting such a contention. In light of the lack of prejudice resulting from the discovery violations, the trial court exercised sound discretion here. See Norris v. State, 289 Ga. 154, 156 (2) (709 SE2d 792) (2011) (recognizing that remedies for discovery violations may include affording the defense the opportunity to interview the witness and granting a continuance).

5. Finally, Tarpley asserts that the trial court abused its discretion when it refused to re-open the evidence to allow the defense to adduce photos, that had not been previously provided to the State, showing the lighting conditions outside of Estes' residence. Tarpley also argues that trial counsel was ineffective for failing to ensure that the photos were produced to the State and

10

adduced at trial.

"Whether to reopen the evidence is a matter which rests within the sound discretion of the trial court," and this Court considers the totality of the circumstances in evaluating the exercise of that discretion. Carruth v. State, 267 Ga. 221, 221 (476 SE2d 739) (1996). The photographs here were not taken until sometime during trial, they were not provided to the State, and Tarpley sought to adduce the photos only after the jury had been informed that the evidence had been closed. In light of these facts, we cannot say that the trial court abused its discretion here.[3]

With respect to his claim that trial counsel was ineffective, Tarpley must show both that counsel's performance was deficient and that the deficient performance was prejudicial. See Terry v. State, 284 Ga. 119, 120 (2) (663 SE2d 704) (2008). "If an appellant fails to meet his or her burden of proving either prong . . . the reviewing court does not have to examine the other prong." Rector v. State, 285 Ga. 714, 716 (6) (681 SE2d 157) (2009). The photos here were merely cumulative of other witnesses' descriptions of the property and

_____

[3] The record does not support Tarpley's assertion that the exclusion of the photographs was a sanction for some discovery violation.

11

Tarpley's own testimony that Estes could see him through the front window. Further, while Tarpley asserts that the photos would have bolstered his defense, the photos at issue would have had the equal force of reiterating the undisputed fact that Tarpley sought out Estes and ended up in his yard with a shotgun. Accordingly, there is no prejudice, and this claim is meritless.

Judgment affirmed. All the Justices concur.