## S16A1035. WRIGHT v. THE STATE.
(794 SE2d 105)

HINES, Presiding Justice.

Cornelius Wright appeals his convictions for the malice murder of victim Mitchieano Carmichael and other crimes. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that on December 17, 2006, Wright shot and killed Carmichael following a series of run-ins between Wright and others after Wright allegedly attempted to sell drugs in an area in Augusta, Georgia, that another drug dealer, Michael Edwards, claimed as his exclusive territory. Among the individuals involved in confronting Wright was Carmichael's younger brother, Zeaccatae ("Zeke"), who got into a physical altercation with Wright after Wright verbally threatened him.

Learning of the fight between Wright and his brother, Carmichael announced plans to retaliate against Wright and obtained a ride from Shakeela McNair for himself and a friend, Donnell Houston, to the house where the fight had occurred. Also riding in the car with McNair and the men was McNair's baby daughter and Megan McClendon, the car's owner. When they arrived at the location, Carmichael exited the vehicle and was immediately confronted by an armed Wright, who briefly exchanged words with Carmichael before shooting him in the leg. After initially falling down, Carmichael quickly got up and ran toward the house chased by Wright. Unable to gain entrance, Carmichael attempted to escape Wright by running down the street, but Wright continued to follow him, firing repeatedly. Hit in the back by several bullets, Carmichael eventually fell wounded onto the sidewalk. Wright then proceeded to stand over Carmichael as he lay on the ground and fire a few final rounds at the victim. Shot a total of five times, Carmichael died at the scene from multiple gunshot wounds. Houston, who ran from the car during the shooting, witnessed the attack, as did McNair and McClendon, who remained in the car with the baby.

---

[1] The crimes occurred on December 17, 2006. On July 3, 2007, a Richmond County grand jury indicted Wright for malice murder, felony murder, possession of a firearm during the commission of a felony (two counts), and aggravated assault. After Wright's first jury trial on these charges ended in a mistrial, he was again tried before a jury August 8-12, 2011, and found guilty of all charges. On August 12, 2011, Wright was sentenced to life in prison for malice murder and consecutive prison terms totaling 30 years on those counts that did not merge with malice murder and were not vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Wright filed a motion for new trial on August 22, 2011, which he amended on October 3, 2013; on October 10, 2013, the motion, as amended, was denied. Wright filed a notice of appeal on October 22, 2013, the appeal was docketed in this Court for the April 2016 term, and submitted for decision on the briefs.

Hearing the gunfire, Edwards came out of a nearby house and was also fired upon by Wright, but was uninjured. Wright then approached the women in McClendon's car and McNair begged him not to shoot because the baby was present. Wright finally drove off in a car belonging to his girlfriend and, after briefly hiding out in a motel, traveled by train to New York City where he stayed with relatives. Subsequently identified as the shooter by several eyewitnesses, Wright was eventually apprehended by law enforcement officials in New York and returned to Richmond County to stand trial. Wright testified at trial and admitted to having shot at Carmichael, but claimed he had done so only in self-defense.

1. The evidence as described above was sufficient to authorize the jury to find Wright guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Wright contends that his trial counsel failed to provide effective assistance in that counsel failed to object to the State's cross-examination of Wright about his pre-arrest silence. Under former Georgia law, the prosecution was not allowed to comment on a defendant's pre-arrest silence even when the defendant took the witness stand at trial.[2] See *Collins v. State*, 289 Ga. 666, 667 (2) (715 SE2d 136) (2011); *Landers v. State*, 270 Ga. 189, 190 (2) (508 SE2d 637) (1998). To prevail on his claim of ineffective assistance, however, Wright must show both that his counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). In order to meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case, id. at 784, and decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. *Redding v. State*, 297 Ga. 845, 850 (5) (778 SE2d 774) (2015). To meet the second prong of the test, Wright must show that there is a reasonable probability that,

---

[2] Wright was tried before the January 1, 2013 effective date of Georgia's new Evidence Code, and therefore the rule set forth in *Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991), applied to his trial. See *Simmons v. State*, 299 Ga. 370, 372-375 (2) (788 SE2d 494) (2016).

absent any unprofessional errors on counsel's part, the result of his trial would have been different. *Smith*, supra at 783.

At trial, Wright testified in his own defense and was cross-examined by the State. During direct examination, Wright's trial counsel elicited testimony from him that his confrontation with Zeke ended when Zeke's friends arrived with an assault rifle. Upon seeing the rifle, Wright claimed that he ran to the back yard of the house where the altercation occurred to obtain a gun for himself, and that when he returned, Zeke and the others had left. Asked by his trial counsel whether he called the police to report this incident, Wright stated he did not, explaining that he did not have his cell phone on him at the time.

Wright additionally testified that later that night he was in the front yard of the same house when a car pulled up and Carmichael jumped out and began yelling at him. Wright claimed he was alarmed by Carmichael's actions because he knew Carmichael owned at least two guns. Wright claimed that as he tried to turn away from Carmichael, he heard two gunshots which prompted him to run behind a car and then fire his gun multiple times in self-defense. Wright admitted that after he fired shots at Carmichael in self-defense, he also fired a warning shot at Edwards when he saw him shortly thereafter. Wright stated that he then left the scene, ultimately contacting a girlfriend to take him to the train station where he caught a train to New York. Questioned by his counsel about why he left town immediately after the shooting, Wright testified that he did so out of fear that Zeke and the others would come looking for him, and that he did not know whether Carmichael had actually been shot.

Thereafter, during cross-examination, the prosecutor asked Wright four questions which focused on Wright's failure to contact police following the incident with Zeke or after the subsequent shooting, including questions regarding Wright's professed lack of access to a cell phone, his claim to have fled the jurisdiction solely as an act of self-preservation, and his unprompted assertion that he believed any investigation conducted by police would clear him. Although such questions ordinarily would constitute improper comments by the State on Wright's pre-arrest silence, the prosecution in this case had every right to pursue a thorough and sifting examination after Wright's counsel opened the door to this line of questioning on direct examination. See *Doyle v. State*, 291 Ga. 729, 733 (733 SE2d 290) (2012). Any objection by Wright's counsel to these comments regarding Wright's pre-arrest silence thus would have been overruled. As the failure to make a meritless objection cannot constitute ineffective

assistance, see id., we conclude trial counsel was not ineffective for failing to object to the State's cross-examination of Wright in this manner.

Moreover, even were we to assume that the State improperly commented on Wright's pre-arrest silence and his trial counsel's failure to object constituted deficient performance, given the evidence presented at trial refuting his claim of self-defense, Wright cannot show there exists a reasonable probability that absent this deficiency, the outcome of his trial would have been different. See *Moore v. State*, 278 Ga. 397, 399 (2) (a) (603 SE2d 228) (2004). Accordingly, we conclude Wright has failed to show the prejudice necessary to establish ineffective assistance of counsel. Id.

3. Wright additionally asserts that the trial court erred when it prohibited him from introducing evidence he contends would have shown specific acts of violence committed by the victim against third parties. Under Georgia's former Evidence Code, a defendant claiming self-defense justification could introduce evidence of specific violent acts by the victim against third parties. See *Chandler v. State*, 261 Ga. 402, 407 (405 SE2d 669) (1991).[3] The defendant, however, carried the burden of proving that the specific violent acts should be admitted and had to, "at a minimum, (1) follow the procedural requirements for introducing the evidence, (2) establish the existence of prior violent acts by competent evidence, and (3) make a prima facie showing of justification." (Footnotes omitted.) *Laster v. State*, 268 Ga. 172, 174 (486 SE2d 153) (1997). To make a prima facie showing of justification, the defendant was required to show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself. See *Tarpley v. State*, 298 Ga. 442, 444 (782 SE2d 642) (2016). Following an evidentiary hearing, the trial court concluded Wright failed to make a prima facie case of justification and granted the State's motion in limine to exclude this evidence; we review this decision on appeal for abuse of discretion. Id.

After examining the record, we agree with the trial court that while some evidence exists showing Carmichael engaged in aggressive behavior toward Wright immediately after exiting the car, there is no evidence supporting Wright's claim that Carmichael assaulted him or that Wright was honestly trying to defend himself when he began shooting at Carmichael and others. See *Walden v. State*, 267 Ga. 162, 163 (476 SE2d 259) (1996) (even if the victim shows some

---

[3] Although the evidentiary rule set forth in *Chandler* no longer remains viable under Georgia's new Evidence Code, see *Tarpley v. State*, 298 Ga. 442, 443, n. 2 (782 SE2d 642) (2016), it applies in this case as Wright's trial occurred before the new Evidence Code's effective date.

aggressive behavior, the defendant must still show he was assaulted and honestly defending himself when he fired the fatal shot). Eyewitnesses testified at trial that Carmichael did not have a gun when he confronted Wright and did not assault Wright; that Wright shot Carmichael in the leg first and then continued to shoot at him as he attempted to run away; and that, after Carmichael fell wounded to the ground, Wright proceeded to stand over him and shoot him several more times. Even accepting Wright's claim that he heard two gunshots after he allegedly turned his back on Carmichael, this testimony was not sufficient to show that Carmichael assaulted Wright, especially as there was no evidence presented at trial that Carmichael was armed at the time of the confrontation. Id. See also *Graham v. State*, 274 Ga. 696, 697-698 (558 SE2d 395) (2002).

4. Finally, Wright argues the trial court erred by refusing his request to charge the jury on the lesser included offense of voluntary manslaughter. To support a charge on voluntary manslaughter there must be evidence that the accused "acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a). Here, Wright testified that he shot the victim in self-defense because he feared for his life. Although jury charges on self-defense and voluntary manslaughter are not mutually exclusive, "the provocation necessary to support a charge of voluntary manslaughter is different from that which will support a claim of self-defense." (Citation and punctuation omitted.) *Walker v. State*, 281 Ga. 521, 524 (640 SE2d 274) (2007). Only where the provocation so influenced and excited the accused that he reacted passionately rather than simply in an attempt to defend himself will a charge on voluntary manslaughter be warranted. Id. Because there was no evidence presented that Wright shot the victim due to an irresistible passion, there was no evidence to support a voluntary manslaughter charge and no error in the trial court's refusal to give such a charge. See *Dugger v. State*, 297 Ga. 120, 123-124 (7) (772 SE2d 695) (2015).

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2016.

*Robert L. Persse*, for appellant.

*Ashley Wright, District Attorney, Madonna M. Little, Joshua B. Smith, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary C. Greaber, Assistant Attorney General,* for appellee.