300 Ga. 509
FINAL COPY

S16A1581.  WYATT v. THE STATE.

HUNSTEIN, Justice.

Appellant John Randall Wyatt was tried and convicted of murder in connection with the death of two-year-old Andrea Marginean.[1]  Wyatt appeals, claiming that the evidence was insufficient to sustain his conviction and that the trial court erred by allowing the State's medical expert to offer opinion testimony concerning Shaken Baby Syndrome.   Finding no error, we affirm.

---

[1] On July 25, 2013, a Gwinnett County grand jury indicted John Randall Wyatt for three counts of felony murder predicated on aggravated battery (Count 1), aggravated assault (Count 2), cruelty to children in the first degree (Count 3), and one count each of aggravated battery, aggravated assault, and cruelty to children in the first degree.  We previously granted the State's interlocutory appeal, and reversed the trial court's order granting a special demurrer on some of the charges listed in Wyatt's indictment.  See State v. Wyatt, 295 Ga. 257 (759 SE2d 500) (2014).

Following a trial conducted November 3-7, 2014, a jury found Wyatt guilty on all counts except the cruelty to children in the first degree charge, which the State nolle prossed.  The trial court sentenced Wyatt to life imprisonment for felony murder predicated on aggravated battery (Count 1), and merged the aggravated battery and aggravated assault charges into that felony murder conviction for sentencing purposes.  The remaining felony murder counts were vacated by the trial court for sentencing purposes.  Wyatt filed a motion for new trial on November 18, 2014 and amended it thereafter on September 18, 2015.  After a hearing, the trial court denied the motion on February 9, 2016.  Wyatt timely filed a notice of appeal to this Court. The appeal was docketed to the September 2016 term of this Court and was thereafter submitted for decision on the briefs.

1.     Wyatt first alleges that the evidence presented at trial was insufficient to support his conviction.  Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows.  In April 2009, Wyatt was in a relationship with Nicoleta Cosma, formerly Nicoleta Marginean.  Nicoleta lived in Lawrenceville, Gwinnett County, Georgia with her three children: seven-year-old Anthony, five-year-old Daniel, and two-year-old Andrea.  Periodically, Wyatt would stay at the house and watch the children while Nicoleta went to work.

On April 11, 2009, Nicoleta left Wyatt at home with her children while she went to work.  When she returned home, Nicoleta found two-year-old Andrea lying on the corner of her mother's bed.  When Nicoleta lifted Andrea from the bed, the child had no control of her head, her breathing sounding a little congested, and she was unresponsive to her mother's voice.  Nicoleta noticed a new, circular bruise on the child's cheek, as well as bruising and a large red spot on the child's back.  Wyatt made varying statements concerning how Andrea sustained her injuries, including that the child: was sick; had slipped in the bathroom and hit her nose, affecting her breathing; and, that while attempting to change the child's diaper in the bathroom, he turned to wash his

2

hands at which time she "freaked out" because she does not like water or bathing and began banging her head on the toilet.

Nicoleta took Andrea, who was stiffening and unresponsive, to Gwinnett Medical Center. Doctors found bruises on Andrea's face, chin, forehead, groin area, right arm, and multiple bruises on her lower extremities. After a CT scan revealed severe brain injuries, the child was taken to Scottish Rite Children's Hospital for immediate surgical intervention. Despite this, the child died of severe brain injuries on April 14, 2009.

During their investigation into Andrea's death, law enforcement spoke with Nicoleta's sons Anthony and Daniel. The boys told law enforcement that, on the day of the incident, they both heard their sister in the bathroom crying and screaming for their mother. Anthony recalled hearing running water which sounded like water filling the bathtub. He told officers that Wyatt yelled at his sister, after which he heard a loud banging on the bathtub. Anthony later demonstrated this banging sound to another witness by pounding his hand on a nearby table. He also produced $20 to that same witness, explaining that he received the money from Wyatt.

Wyatt also spoke to law enforcement and initially denied any responsibility for Andrea's injuries. He denied having any physical contact with the child, stating that she began banging her head against the toilet while having a tantrum on the bathroom floor. Eventually though, he admitted to striking Andrea on the head with an open hand, but indicated that he did not strike her hard enough to cause the severity of her head trauma.

An autopsy revealed major swelling, two subarachnoid hemorrhages and bruising of the child's brain, as well as severe retinal hemorrhaging of the child's right eye. The medical examiner concluded that these injuries, in conjunction with the child's symptoms of lethargy, lack of responsiveness and abnormal breathing, indicated that some kind of rotational force consistent with a shaking component caused the child's injuries and subsequent death. The State presented additional medical experts who provided their opinions regarding the severity of the child's traumatic brain injuries and Shaken Baby Syndrome.

Based on the foregoing, the record shows that there was sufficient evidence to enable a rational trier of fact to conclude beyond a reasonable doubt

that Wyatt was guilty of the crime for which he was convicted. <u>Jackson v. Virginia</u>, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.      At trial, the State qualified Dr. Andrew Reisner, the neurosurgeon who operated on the victim, as an expert in the field of pediatric neurosurgery. During direct examination, the following transpired:

DR. REISNER:      It's significant trauma, and I can't define it but it's significant trauma. This is not just a slap on the backside or a trip on the floor or a fall on the playground, we see that thousands of times, this is significant.

THE STATE:      Okay. Traffic accidents, do you see them in that type of situation?

DR. REISNER:      Oh yes.

THE STATE:      Falls from high places, you said it's a ten-story building earlier.

Dr. REISNER:      I have kids three, four stories. Yes.

THE STATE:      What if I were to tell you that this child suffered from neither one of those, is this consistent with a shaken baby, shaken impact type injury?

Dr. REISNER:      It is.
THE STATE:      Tell me why.

DEFENDANT:      Judge, I think I have an objection that I would have to take up with the Court.

5

At this time, Wyatt argued that Dr. Reisner's opinion was improper and should be excluded because the State failed to provide notice of the doctor's opinion regarding Shaken Baby Syndrome ten days prior to trial as required by the reciprocal discovery statute. See OCGA § 17-16-4 (a) (4). The State argued that it did not violate the reciprocal discovery statute because there was no written report or oral opinion produced by Dr. Reisner regarding Shaken Baby Syndrome and because the defense and the State had equal access to the doctor. The trial court overruled the objection, finding that Wyatt was not prejudiced by the alleged non-disclosure as the State had identified and produced reports to the defense regarding the Shaken Baby Syndrome opinions of two other expert witnesses, both of whom had already testified. Wyatt claims now, as he did below, that Dr. Reisner's testimony should have been excluded. Reviewing the trial court's decision for abuse of discretion, see Tarpley v. State, 298 Ga. 442 (4) (782 SE2d 642) (2016), we find no error.

Pretermitting whether a contemporaneous objection was made to the purported error, Wyatt's claim is without merit.

> When the State fails to comply with reciprocal discovery requirements, the trial court may, pursuant to OCGA § 17-16-6, "order the state to permit the discovery or inspection, . . . grant a

6

continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed." [Cit.] Exclusion of evidence "is a particularly harsh sanction and should be imposed only where there is a showing of prejudice to the defense and bad faith by the State." [Cit.]

Tarpley, 298 Ga. at 446 (4).

Wyatt has failed to show he was prejudiced by the State's non-disclosure of Dr. Reisner's opinion regarding Shaken Baby Syndrome, warranting an exclusion of the testimony. As the trial court noted, two of the State's expert witnesses had already testified regarding Shaken Baby Syndrome, and defense counsel admitted that he was on notice that this theory could be put forward by the State through those experts. More importantly, the defense presented its own expert at trial as rebuttal exert testimony. Namely, the expert opined: that the contusions on the victim's brain did not occur as a result of being shaken; that, while the victim's death was caused by blunt impacts to the head, there was no way to determine if the injuries were caused accidentally or intentionally; and that prior falls could account for the victim's brain damage, as is typically seen in cases of sudden infant death syndrome. Accordingly this claim is meritless.

Judgment affirmed. All the Justices concur.

7

Decided February 6, 2017.

Murder. Gwinnett Superior Court. Before Judge Turner.

Maryann F. Blend, for appellant.

Daniel J. Porter, District Attorney, Christopher M. Quinn, Richard A. Vandever, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.