**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 23, 2024**

# In the Court of Appeals of Georgia

A23A1765. WILSON v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Kalone Wilson on one count each of aggravated assault, family violence battery, and criminal trespass. Wilson now appeals his convictions and the denial of his motion for new trial, arguing the trial court erred in admitting expert testimony the State did not timely produce during discovery and qualifying that same expert under an incorrect legal standard. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that Carrie Walden and Wilson began a romantic relationship in 2014, and they moved in together not long after that relationship started. But at some point, Wilson became abusive towards Walden, including physically; and in 2019, she ended their relationship and the couple stopped living together. Despite their breakup, Wilson continued contacting Walden and frequently threatened her during those communications.

In the late afternoon on October 31, 2019, Walden—who drove a mini-van taxi for employment—was taking her two-year-old daughter home to get ready for trick-or-treating, when she stopped at a local gas station to refuel her vehicle. Immediately after parking next to one of the gasoline pumps, Walden saw Wilson get out of his car, approach her mini-van, and enter through the passenger-side door. Surprised and fearful, Walden nervously smiled at Wilson, prompting him to ask if she thought "something was funny." But before she could answer, Wilson grabbed Walden's cell

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018) (noting when a conviction is appealed, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence).

phone and threw it out the window. Wilson then placed his hands around Walden's neck and began strangling her.

Struggling to get away, Walden climbed over the seat into the back of the mini-van, but Wilson climbed over as well, began strangling her again, and bit her on the face. At that point, Walden momentarily blacked out; but when she regained consciousness, she managed to open the mini-van's rear door and exit the vehicle. And as she ran toward the gas station convenience store, Walden briefly paused and asked a woman in another vehicle to help her. But with Wilson in pursuit, Walden continued her flight into the store, pleading for help as she did so. Wilson followed and initially threatened others in the store not to intervene; but when one of the store's employees ordered him to leave, he complied. Meanwhile, another store employee—and the woman Walden sought help from in the parking lot—called the police, who arrived a few minutes later.

Thereafter, the State charged Wilson, via indictment, with aggravated assault, family violence battery, and criminal trespass. The case then proceeded to trial, during which the State presented the foregoing evidence. The State also called a forensic sexual assault nurse examiner to testify as an expert on the subjects of domestic

violence, trauma, and the physical effects of strangulation. And after the nurse examiner testified as to her background and experience, the trial court ruled that she could testify as an expert. The jury then found Wilson guilty on all counts at the conclusion of the trial. Subsequently, Wilson filed a motion for new trial, which the trial court denied after a hearing. This appeal follows.

1. Wilson first contends the trial court erred in admitting the nurse examiner's expert opinions regarding the effects of strangulation into evidence, which were based on studies and other information the State did not disclose during discovery (as required by statute). We disagree.

OCGA § 17-16-4 (a) (4), in part, provides:

The prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant at a time agreed to by the parties or ordered by the court to inspect and copy or photograph a report of any physical or mental examinations and of scientific tests or experiments, including a summary of the basis for the expert opinion rendered in the report, or copies thereof, if the state intends to introduce in evidence in its case-in-chief or in rebuttal the results of the physical or mental examination or scientific test or experiment. If the report is oral or partially oral, the prosecuting attorney shall reduce all relevant and material oral portions of such report to writing and shall serve opposing counsel with such portions no later than ten days prior to trial.

To ensure compliance with this statute, OCGA § 17-16-6 directs that

> [i]f at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

And importantly, this Court reviews a trial court's ruling in this regard for an "abuse of discretion."[2]

In this case, nearly two weeks before trial, the State's prosecutor filed a witness list, which included the nurse examiner. During trial, after she was qualified as an expert and asked a few general questions about examining individuals who had suffered trauma, the State asked the nurse examiner if trauma could affect a victim's recall. But before she responded, Wilson's counsel objected and requested a bench conference outside the jury's presence. Once the jury left the courtroom, Wilson's

---

[2] *Morris v. State*, 341 Ga. App. 568, 575 (3) (802 SE2d 13) (2017); *see Williams v. State*, 302 Ga. 474, 478 (II) (807 SE2d 350) (2015) (explaining appellate courts review a trial court's evidentiary rulings based on alleged criminal discovery violations under an abuse-of-discretion standard of review).

counsel complained that, although a few days before trial the State disclosed that the nurse examiner would be referring to an anatomical diagram of the neck in her testimony about strangulation, she was now, unfairly, going to offer opinions on hypothetical questions that should have been disclosed much earlier in the proceedings.

The State's prosecutor responded that the nurse examiner had not done any experiments or produced any reports, oral or written, that would fall under OCGA § 17-16-4 (a) (4). In reply, Wilson's counsel claimed the defense was unprepared for the nurse examiner to offer medical opinions about how strangulation occurs, seemingly implying that she was not qualified to provide such opinions. But the trial court noted that it had reviewed OCGA § 17-16-4 and overruled Wilson's objection. Even so, the court ruled that following the nurse examiner's direct testimony, it would give Wilson additional time to prepare for his cross examination of the witness.

The State's prosecutor then continued her direct examination, which included the nurse examiner referring to a 1943 study of the effects of G-forces on fighter pilots that measured, among other things, the time it took to lose consciousness if air and blood flow through the neck were cut off. And when the State's prosecutor posed a

6

hypothetical question as to whether a person could lose and regain consciousness while being strangled, Wilson's counsel objected and, again, was overruled. Then, toward the end of the direct examination, Wilson's counsel objected when the State's prosecutor started to pose a hypothetical based on the nurse examiner's review of the police reports and photographs of Walden, arguing the defense was "entitled to the science" behind her opinion. But the trial court again overruled the objection, citing its previously stated reasons for doing so.

Upon the conclusion of the State's direct examination, the trial court sent the jury out for a break and held another bench conference, in which it reiterated its ruling to overrule Wilson's objections to the nurse examiner's testimony. Nevertheless, acknowledging defense counsel's complaint that he did not have adequate time to prepare for the specific opinions provided by the State's expert, the trial court asked counsel what he thought would be an adequate remedy. But rather than requesting a continuance, Wilson's counsel stated he would stand on his objection, arguing, *inter alia*, that a delay would possibly annoy the jurors. Consequently, the trial court repeated that it did not think OCGA § 17-16-4 (a) (4) applied to the nurse examiner's testimony.

7

On appeal, Wilson argues the nurse examiner's expert opinions—relying on the anatomical diagram of the neck and the 1943 G-forces study—should have been excluded as they prejudiced his right to a fair trial. This argument is a nonstarter.

The Supreme Court of Georgia has held that OCGA § 17-16-4 (a) (4) requires pretrial disclosure of an expert's written report and that if an expert makes even an oral report of his opinions regarding evidence before trial, the prosecutor is required to prepare a written report of the opinion, provide the basis or bases of that opinion, and serve the report on defense counsel no later than ten days before trial.[3] But here, there is no evidence the nurse examiner created a written or oral report; and the State was under no duty to reduce to writing a non-existent oral report."[4] Furthermore, as to the anatomical chart, Wilson acknowledged he was told about it prior to trial and did not object when it was admitted as an exhibit. Additionally, the 1943 study was "not introduced into evidence, nor was it a report on the results of an examination,

---

[3] *See Heywood v. State*, 292 Ga. 771, 776-77 (4) (b) (743 SE2d 12) (2013) (holding that current version of OCGA § 17-16-4 (a) (4) requires prosecutor to disclose written report made by an expert witness regarding her opinions or prepare a written version of an expert's oral report, if such is made, and serve defense counsel with same at least ten days before trial); *Love v. State*, 349 Ga. App. 741, 750 (4) (b) (824 SE2d 745) (2019) (same).

[4] *Williams*, 302 Ga. at 479 (II).

test or experiment within the meaning of OCGA § 17-16-4 (a) (4)."[5] Given these circumstances, Wilson cannot establish a violation of OCGA § 17-16-4 (a) (4).[6]

Moreover, even if we were to assume the State did not comply with OCGA § 17-16-4 (a) (4), we would not agree the trial court erred by admitting the nurse examiner's testimony. Indeed, exclusion of evidence is "a particularly harsh sanction and should be imposed only where there is a showing of prejudice to the defense and bad faith by the State."[7] And setting aside the question of whether the State acted in bad faith, during the hearing on his motion for new trial, Wilson claimed he would possibly have interviewed the nurse examiner before trial if he had known her testimony about strangulation would be in such depth. But beyond that, he failed to

---

[5] *Turner v. State*, 270 Ga. App. 245, 247 (4) (606 SE2d 296) (2004).

[6] *See Williams*, 302 Ga. at 479 (II); *see Heywood*, 292 Ga. at 777 (4) (b) (explaining defendant pointed to nothing in the record to prove that State's expert ever made an oral report before he testified, and in the absence of such a showing, defendant could not establish a violation even of OCGA § 17-16-4 (a) (4)); *see also Turner*, 270 Ga. App. at 247 (4) (holding that medical study to which nurse who testified for the prosecution referred was not admitted into evidence but was simply acknowledged by the nurse as one of the studies she was familiar with which was part of the medical literature on which her expertise was based, and therefore, was not subject to requirements of OCGA § 17-16-4 (a) (4)).

[7] *Tarpley v. State*, 298 Ga. 442, 446 (4) (782 SE2d 642) (2016) (punctuation omitted); *accord Chance v. State*, 291 Ga. 241, 245 (5) (728 SE2d 635) (2012).

articulate what prejudice he suffered that would have been cured by timely disclosure.[8]

Needless to say, it is usually a sufficient remedy for the defense to "be afforded an opportunity to interview the witness."[9] Indeed here, the trial court offered Wilson a continuance or, at the least, more time to interview the nurse examiner prior to cross examining the witness, but Wilson declined it. So, even if the State failed to comply with its discovery obligations, the trial court offered a sufficient remedy and did not

[8] *See Murphy v. State*, 299 Ga. 238, 244 (3) (787 SE2d 721) (2016) (explaining trial court did not err in admitting expert opinion despite State's failure to comply with OCGA § 17–16–4 (a) (4) given that defendant made no showing of what additional evidence she would have presented or how the defense strategy would have materially changed had she been given timely notice of this undisclosed opinion); *Leger v. State*, 291 Ga. 584, 587 (2) (a) (732 SE2d 53) (2012) (holding trial court did not abuse its discretion by admitting DNA evidence not disclosed in compliance with the requirements of OCGA § 17-16-4 (a) (4) when defendant failed to articulate what prejudice he suffered that would have been cured by timely disclosure); *Aleman v. State*, 224 Ga. App. 391, 393 (2) (480 SE2d 393) (1997) (holding trial court did not err in refusing to exclude scientific report because defendant made no showing at trial that she was prejudiced as a result of the State's failure to make the scientific report in question available to her before trial).

[9] *Norris v. State*, 289 Ga. 154, 156 (2) (709 SE2d 792) (2011) (punctuation omitted).

abuse its discretion in refusing to impose the harsh sanction of excluding the nurse examiner's testimony.[10]

2. Wilson also maintains the trial court erred in initially qualifying the nurse examiner as an expert, arguing that it did so under an incorrect legal standard. Again, we disagree.

Upon calling the nurse examiner as a witness, the State's prosecutor questioned her extensively regarding her educational background and experience in her field—specifically her experience with the subjects of domestic violence, trauma, and the physical effects of strangulation. And in her testimony, the nurse examiner explained that she had testified as an expert on these subjects on three prior occasions. The State's prosecutor then tendered the nurse examiner as an expert witness. At this point, the trial court asked Wilson if he had an objection or wanted to question the

---

[10] *See Tarpley*, 298 Ga. at 446-47 (4) (holding defendant was not prejudiced by State's failure to include medical examiner's name on witness list in murder trial and to provide defendant with a copy of the autopsy report given that trial court continued trial to allow defendant to test evidence discussed by medical examiner and was permitted to interview individual who performed medical examiner's test); *see also Valentine v. State*, 293 Ga. 533, 536 (2) (748 SE2d 437) (2013) (holding that by failing to ask for more time to prepare for the testimony of the expert witness, defendant waived any claim of error with respect to the failure of the trial court to give his lawyer more time).

witness as to her credentials, but in response, Wilson's counsel replied only that "we object to counsel identifying anyone and we caution the Court about doing the same."

On appeal, Wilson argues the trial court erred by qualifying the nurse examiner as an expert under a repealed statute, OCGA § 24-9-67.1,[11] and the now abrogated evidentiary standard delineated in *Harper v. State*.[12] But as Wilson acknowledges, his response to the trial court's query following the State's *voir dire* can hardly be characterized as a specific objection to the nurse examiner being qualified as an expert witness.[13] As a result, the ruling related to this evidence is only "subject to review on appeal for plain error affecting substantial rights."[14] In this regard, the Supreme Court

---

[11] Former OCGA § 24-9-67.1 was repealed, effective January 1, 2013. *See* Ga. L. 2011, pp. 99, 124-125, § 2 (Act 52).

[12] 249 Ga. 519 (292 SE2d 389) (1982), *superseded by statute as stated in Nundra v. State*, 316 Ga. 1 (885 SE2d 790) (2023).

[13] *See Nundra v. State*, 316 Ga. 1, 13-14 (5) (a) (885 SE2d 790) (2023) (holding because defendant's objection to expert testimony on appeal was not the same as the issue raised at trial, his claim could only be reviewed for plain error); *Anthony v. State*, 302 Ga. 546, 549 (II) (807 SE2d 891) (2017) (holding that "[i]n order to preserve an objection for ordinary appellate review, the specific ground of the objection must be made at the time the challenged evidence is offered." (punctuation and footnote omitted)).

[14] *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016) (punctuation omitted); *see* OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such

12

of Georgia has adopted the federal plain-error standard of review, as articulated by the Supreme Court of the United States in *Puckett v. United States*.[15] Under this four-pronged test,

> there [first] must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[16]

---

errors were not brought to the attention of the court.").

[15] 556 U.S. 129 (129 SCt 1423, 173 LE2d 266) (2009); *see Gates*, 298 Ga. at 326 (3) (noting that the Supreme Court of Georgia has adopted the four-pronged plain-error standard as set forth in *Puckett*).

[16] *Gates*, 298 Ga. at 327 (3) (punctuation omitted), *quoting State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); *see Puckett*, 556 U.S. at 135 (II).

And importantly, satisfying all four prongs of this standard is "difficult, as it should be."[17] Under this standard, Wilson cannot show the trial court plainly erred in qualifying the nurse examiner as an expert witness—even though the court did refer to OCGA § 24-9-67 and *Harper* in its ruling.

To address Wilson's specific claim, some historical context is useful. When the current evidence code became effective in 2013,[18] OCGA § 24-9-67.1 was replaced with the nearly identical OCGA § 24-7-707,[19] which provided: "In criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." But effective July 1, 2022, the General Assembly repealed

---

[17] *Rijal v. State*, 367 Ga. App. 703, 705 (1) (888 SE2d 272) (2023) (punctuation omitted); *accord Williams v. State*, 315 Ga. 490, 495 (2) (883 SE2d 733) (2023).

[18] *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's then-new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[19] *See Robinson v. State*, 309 Ga. 729, 735 (3) n.2 (848 SE2d 441) (2020) (noting "the evidentiary requirements relating to the admissibility of expert opinion testimony in a criminal case under the new Evidence Code (OCGA § 24-7-707) are nearly identical to those that applied under the former Evidence Code (OCGA § 24-9-67")); *see also* Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 441 (5th ed. 2016) (explaining "this statute in essence recreates a former Georgia code provision [OCGA § 24-9-67] that does not appear in federal law").

OCGA § 24-7-707 and amended OCGA § 24-7-702 such that the latter statute now governs the admissibility of expert testimony in criminal as well as a civil cases.[20] That amended version of OCGA § 24-7-702 (b) provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if: (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) The testimony is based upon sufficient facts or data; (3) The testimony is the product of reliable principles and methods; and (4) The expert has reliably applied the principles and methods to the facts of the case.

With this amendment, the General Assembly extended "to criminal cases the federal standard of admissibility of expert testimony articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[21] and its progeny."[22] And under this standard,

---

[20] *See* 2022 Ga. L., p. 201, § 1 (amending OCGA § 24-7-702 to apply "in all proceedings" rather than only "in all civil proceedings" and repealing OCGA § 24-7-707); *see also* OCGA § 24-7-702 (a) ("Except as provided in Code Section 22-1-14 and in subsection (g) of this Code section, the provisions of this Code section shall apply in *all* proceedings. The opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses." (emphasis supplied)).

[21] 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

[22] *Smith v. State*, 315 Ga. 287, 300 (2) (b) n.6 (882 SE2d 300) (2022) (punctuation omitted); *accord Rijal*, 367 Ga. App. at 713 (3) (b) (ii) n.58.

a trial court must evaluate the reliability of the expert's proffered testimony; proper considerations include whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training.[23]

Importantly, the trial court has broad discretion when "accepting or rejecting the qualifications of an expert witness, and we review a trial court's ruling on both the qualification of an expert and the admissibility of that expert's testimony for an abuse of discretion."[24]

In this matter, the trial began on July 12, 2022, and therefore, the current version of OCGA § 24-7-702 (b) outlined the applicable standard for determining the nurse examiner's qualifications to provide expert opinions.[25] And as previously noted, the trial court did, in fact, refer to OCGA § 24-9-67 and *Harper* when it explained its

---

[23] *Smith*, 315 Ga. at 300 (2) (b) n.6 (punctuation omitted); *accord Rijal*, 367 Ga. App. at 713 (3) (b) (ii) n.58.

[24] *Garland v. State*, 361 Ga. App. 724, 732 (2) (865 SE2d 724) (2021) (punctuation omitted).

[25] *See supra* note 20 & accompanying text.

reasons for finding her qualified to testify as an expert. But just before doing so, the trial court *also* cited to OCGA § 24-7-702 (b) and recited some of the language in that statute, explaining that the expert's testimony "must be relevant and helpful to the trier of fact in order to be admissible." Furthermore, the nurse examiner began her testimony by recounting her educational background in nursing, her additional education and training for nearly two years in the specialty of forensic nursing, and noting that she held several advanced certificates in forensic nursing. Thereafter, she testified to her specific training with regard to identifying signs of strangulation, her experience training other nurses in this subject, and her time spent keeping current with the most recent articles and studies pertaining to this specialty. In light of these circumstances, the nurse examiner's testimony during the State's *voir dire* provided the trial court with sufficient information to "consider whether the expert [could] testify competently on the areas [she] intend[ed] to discuss, whether the expert's methodology [was] sufficiently reliable, and whether the expert's testimony, through the application of [her] scientific, technical, or specialized expertise, [would] assist the trier of fact to understand the evidence."[26] As a result, we are not persuaded the trial

---

[26] *United States v. Jayyousi*, 657 F3d 1085, 1106 (IV) (C) (11th Cir. 2011). Although our current Evidence Code has been in effect for ten years, we nevertheless

court abused its discretion—much less plainly erred—in qualifying the nurse examiner as an expert.[27]

Moreover, even if Wilson could show any "clear or obvious error in the trial court's admission of [the nurse examiner's] testimony, he cannot affirmatively show

---

note that because it is modeled on the Federal Rules of Evidence, when the appellate courts of this State consider the meaning of those provisions, "we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016).

[27] *See United States v. Perry*, 14 F4th 1253, 1263-65 (II) (A) (11th Cir. 2021) (holding admission of expert testimony under Rule 702 from law enforcement agent about meaning of coded drug language used in intercepted phone conversations between defendant and coconspirators was not plain error given that expert testimony about coded language was within agent's expertise and was helpful to jury); *United States v. Clotaire*, 963 F3d 1288, 1298 (III) (C) (11th Cir. 2020) (holding trial court did not commit plain error in prosecution for access device fraud and identity theft by permitting special agent to testify as expert, under Rule 702, about difference between needle distortion and barrel distortion caused by camera lens because agent had specialized training and experience working with closed circuit television cameras, and he connected his opinions about camera distortions to knowledge from this experience working with security camera footage); *Jayyousi*, 657 F3d at 1106-07 (IV) (C) (explaining because defendants made no specific objection to expert's testimony on particular issue of use of code words by violent Islamists in conversations, appellate court would address defendant's challenge under plain error doctrine and, thus, holding trial court did not plainly err when it permitted expert, pursuant to Rule 702, to give such testimony given his specialized knowledge and fact that his testimony helped jury understand the issue).

that the alleged error probably did affect the outcome below."[28] Indeed, Walden testified that Wilson attacked her in her vehicle, specifically strangling her to the extent she briefly lost consciousness and biting her on the face before she could flee into the gas station's convenience store. Additionally, the responding officer testified that he observed a bite mark on Walden's face and marks on her neck consistent with strangulation, and the State supported this testimony with photos of Walden taken immediately after the incident. Finally, the convenience-store employee recounted Walden fleeing into the store, noted that she appeared upset, and confirmed that Wilson followed her inside the store before being ordered to leave. So, given the overwhelming evidence of Wilson's guilt, it "cannot be said that any error in the

---

[28] *Jones v. State*, 299 Ga. 40, 43 (2) (785 SE2d 886) (2016) (punctuation omitted).

admission of [the nurse examiner's testimony] likely affected the outcome below."[29] Consequently, the admission of that testimony did not constitute reversible error.

For all these reasons, we affirm Wilson's convictions and the denial of his motion for new trial.

*Judgment affirmed. Rickman and Pipkin, JJ., concur.*

---

[29] *Jones*, 299 Ga. at 43 (2) (punctuation omitted); *see Watson v. State*, 303 Ga. 758, 761 (2) (c) (814 SE2d 396) (2018) (holding trial court did not plainly err by allowing detective to provide expert opinion about trigger pull pressure and the possibility of a .380-caliber gun firing .40 caliber bullets because overwhelming evidence of defendant's guilt showed that the detective's testimony did not likely affect the outcome of the trial); *Jones*, 299 Ga. at 42-43 (2) (finding the trial court did not plainly err in admitting into evidence the testimony of State's expert witness on geo-cell phone analytics to show defendant's proximate location the day before murder given other overwhelming evidence that placed defendant at exact scene of the crime).