**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 16, 2026**

# In the Court of Appeals of Georgia

A25A1976. CLAY v. THE STATE.

DILLARD, Presiding Judge.

Kenneth Clay appeals his convictions for failure to register as a sex offender and violation of sex-offender restrictions. In doing so, Clay argues the trial court erred by failing to "consider and make inquiries" into his post-waiver request for counsel and instruct the jury, *sua sponte*, on his sole affirmative defense of justification. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record shows that on March 27, 2007, Clay pleaded guilty to child molestation and criminal attempt to commit aggravated child molestation in the Superior Court of Muscogee County.

---

[1] See, e.g., *Roundtree v. State*, 358 Ga. App. 140, 141 (854 SE2d 340) (2021).

As a result of those convictions, Clay was a registered sex offender. And on May 16, 2017, Clay registered with the Toombs County Sheriff's Office ("TCSO"), indicating that his then-current address was 211 Everett Street, Vidalia, Georgia. Clay also signed a registration form, acknowledging the requirement that he "must re-register with the [S]heriff's [O]ffice in person within 72 hours prior to [his] birthday; 72 hours prior to any change of address; [and] within 72 hours of change of employment or school status." Significantly, as a sex offender who committed child-molestation offenses between July 1, 2006, and June 30, 2008, Clay was prohibited from living within 1,000 feet of any "child care facility, church, school, areas where minors congregate (public and private parks, recreational facilities, playgrounds, skating rinks, neighborhood centers, gymnasium[s], school bus stops, and public & community swimming pools)."

On May 25, 2017, TCSO attempted to verify Clay's 211 Everett address, but in doing so, it determined his residence was not compliant with sex-offender restrictions because it was within 1,000 feet of a "park splash pool or splash pad." And just after that, Robin Banks—a lieutenant with the TCSO and the Tombs County Detention Center—called Clay to tell him that address was not compliant and he had 72 hours to find a new home. The next day, on May 26, 2017, Clay went to the TCSO and

provided 3767 Georgia Highway 297 in Vidalia, Georgia, as his new residential address. But when another TCSO officer tried this address, he determined that—although it was compliant with sex-offender restrictions—Clay did not live there. On July 17, 2017, Clay was arrested at the 211 Everett address for failing to comply with his sex-offender registration requirements. And later that day, Clay posted on social media that he was arrested where he lives.

Clay was charged, via indictment, with failure to register as a sex offender and violation of sex-offender restrictions. Before trial, Clay elected to represent himself, and the trial court held a *Faretta* hearing[2] on the matter. And after the trial court asked Clay questions about his age and education, he stated, "I'm going to repeat for the

_____

[2] See *Faretta v. California*, 422 U.S. 806, 835-36 (V) (95 SCt 2525, 45 LE2d 562) (1975) (holding that if a defendant makes a pre-trial, unequivocal assertion of the right to self-representation, the request must be followed by a hearing to ensure the defendant knowingly and intelligently waives the "traditional benefits associated with the right to counsel" and understands the "disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open" (quotation marks omitted)); *Wiggins v. State*, 298 Ga. 366, 370 (2) (782 SE2d 31) (2016) (reversing the defendant's convictions when he "unequivocally asserted his right to self-representation and that his request to proceed pro se was implicitly denied by the trial court without a Faretta hearing"); *Alred v. Georgia Pub. Def. Council*, 362 Ga. App. 465, 468 n.9 (869 SE2d 99) (2022) (noting that "[a] Farretta hearing is conducted to ensure the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation." (citation modified)).

record . . . I do not want representation." The court recognized that Clay did not want representation, he said as much "several times," that it was on the record, and then told him there was no need to continue repeating his desire to represent himself. Even so, Clay refused to answer several of the court's questions about his educational background, whether he could read, and whether he had difficulty understanding or speaking English. But Clay did note that he previously represented himself in a civil or criminal case. Then, when asked by the court why he believed he could "do a better job than a lawyer," Clay responded, "I can represent myself better than a lawyer because I know my case better than anyone."

During Clay's discussion with the trial court, he conceded that he could potentially defend himself to his own detriment, and acknowledged he was not entitled to special treatment in doing so. Clay then answered affirmatively when the court asked if he understood that he would need to abide by "the same rules it took years for attorneys to learn." Clay also confirmed that, if he were convicted, he could not claim on appeal that his convictions were due to his own incompetency in representing himself. Clay then answered questions establishing that he understood the risks and

limitations he would have by representing himself, especially if he were ultimately incarcerated.

Even so, Clay asked, "I will refer to representing myself, that if I were to ask for co-counsel in the matter, the Court is in authority to do so; is that not correct?" The trial court responded that Clay was *not* entitled to co-counsel, but he was entitled to have an attorney represent him. And the court also advised Clay that—if he asserted the right to represent himself—it was unlikely a mid-trial request for counsel would be granted because doing so would disrupt the proceedings. When the court asked Clay if anyone had threatened or induced him to waive his right to have a lawyer represent him, he answered no. At this point, the court advised Clay—more than once—that he could not be his own lawyer while simultaneously having a lawyer represent him, and Clay stated that he understood. Then, after noting the various benefits of having an attorney represent him, the court ultimately concluded that Clay had elected to represent himself and allowed him to do so.

Following a jury trial at which Clay represented himself, he was convicted of failing to register as a sex offender and violating sex-offender restrictions. Clay then

obtained post-conviction counsel and filed a motion for new trial, which was denied after a hearing. This appeal follows.

1. Clay first argues the trial court erred in failing to consider and make inquiries into his post-waiver request for counsel. We disagree.

The federal and Georgia constitutions "guarantee a criminal defendant the right to self-representation."[3] But to avail oneself of this right, a defendant is "required to clearly and unequivocally assert his desire to represent himself."[4] So, if a defendant makes "an *unequivocal* assertion of his right to represent himself prior to trial, the

---

[3] *Woodard v. State*, 352 Ga. App. 322, 327(2) (835 SE2d 35) (2019). See U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence"); Ga. Const., Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."); *Wiggins v. State*, 298 Ga. 366, 368(2) (782 SE2d 31) (2016) ("It is well settled that both the federal and state constitutions guarantee a criminal defendant both the right to counsel and the right to self-representation." (punctuation omitted)); *Taylor v. Ricketts*, 239 Ga. 501, 502 (238 SE2d 52) (1977) ("A state may not force a lawyer upon an appellant when he insists that he wants to conduct his own defense.").

[4] *Woodard*, 352 Ga. App. at 327–28(2). Accord *Oliver v. State*, 305 Ga. 678, 680(2) (827 SE2d 639) (2019); *Wiggins*, 298 Ga. at 368(2).

request should be followed by a *Faretta* hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation."[5] Simply put, if the trial court "improperly denies a defendant his right to self-representation, this denial is a structural error that is not subject to a harmlessness analysis, and [it] requires automatic reversal."[6] Even so, if the assertion of the right to proceed without the benefit of counsel is "equivocal, there is no reversible error in requiring the defendant to proceed with counsel."[7]

Here, during the *Faretta* hearing, Clay repeatedly and unequivocally told the trial court he wanted to represent himself. He was advised of the benefits of having counsel and the potential negative consequences of declining legal representation, and he confirmed that he would need to abide by the same rules as attorneys in

---

[5] *Woodard*, 352 Ga. App. at 328(2) (quotation marks omitted). Accord *Owens v. State*, 298 Ga. 813, 814(2) (783 SE2d 611) (2016); *Smith v. State*, 332 Ga. App. 849, 853(2) (775 SE2d 211) (2015) (quotation marks omitted).

[6] *Woodard*, 352 Ga. App. at 328(2) (quotation marks omitted). Accord *Oliver*, 305 Ga. at 680(2).

[7] *Woodard*, 352 Ga. App. at 328 (2) (punctuation omitted); *Wiggins*, 298 Ga. at 368(2). Accord *McClarity v. State*, 234 Ga. App. 348, 348(1) (506 SE2d 392) (1998).

representing himself. And at no point during the *Faretta* hearing did Clay express any hesitancy about wanting to representing himself at trial.

Now, Clay contends the trial court abused its discretion in failing to consider and make inquiries into his post-waiver request for counsel. Significantly, our Supreme Court has held that "[a]fter a defendant properly waives his Sixth Amendment right to counsel, that right is no longer absolute."[8] To be sure, the right to counsel does not "evaporate entirely after a valid waiver, and a defendant may make a post-waiver request for counsel."[9] But whether to grant or deny a defendant's post-waiver request for counsel is "within the broad discretion of the trial court."[10] That said, if an examination of the record reveals that a court has "abused its discretion in denying a post-waiver request for counsel during trial, it is a structural

---

[8] *Wilkerson v. State*, 286 Ga. 201, 204(2)(b) (686 SE2d 648) (2009). Accord *Kelly v. State*, 344 Ga. App. 433, 435 (810 SE2d 197) (2018) (punctuation omitted).

[9] *Kelly*, 344 Ga. App. at 435 (punctuation omitted). Accord *Wilkerson*, 286 Ga. at 204(2)(b).

[10] *Wilkerson*, 286 Ga. at 204(2)(b). Accord *Davis v. State*, 304 Ga. App. 355, 362(3) (696 SE2d 381 ) (2010).

Sixth Amendment violation and is not subject to a harmless error analysis on direct appeal . . . ."[11]

In this case, although Clay concedes he "clearly waived his right to counsel [during] the . . . *Faretta* hearing," he maintains it is "not clear . . . that [he] did not subsequently invoke [that] right." Indeed, Clay claims that immediately following the *Faretta* hearing, he filed a "convoluted" motion for "stand[-]by counsel." And while Clay (rightly) concedes that he does not have a right to stand-by counsel,[12] he nevertheless claims it "is not entirely clear [from his] filing that he meant 'stand[-]by

---

[11] *Wilkerson*, 286 Ga. at 204(2)(b) (citations omitted).

[12] See *Simpson v. Battaglia*, 458 F3d 585, 597(II)(B)(2) (7th Cir. 2006) ("The *Faretta* right and the appointment of standby counsel inherently conflict which, taking into account that hybrid representation is not required, supports the conclusion that there is no right to standby counsel. Certainly there is no Supreme Court precedent clearly establishing such a right." (citation omitted)); *United States v. Beckton*, 740 F3d 303, 307(II) (4th Cir. 2004) ("[A] pro se defendant has no right to standby counsel when he chooses to proceed pro se. It follows, therefore, that a district court has broad discretion to guide what, if any, assistance standby, or advisory, counsel may provide to a defendant conducting his own defense." (citation and punctuation omitted)); *United States v. Mikolajczyk*, 137 F3d 237, 246(VI) (5th Cir. 1998) ("[A defendant] was constitutionally guaranteed the right to represent himself if he so chose, or to receive competent representation from an attorney, but the availability of standby counsel to provide a combination of the two was not constitutionally required. If [the defendant] had no right to standby counsel, it seems unlikely that standby counsel's failure to assist could be a violation of his Sixth Amendment rights.").

counsel' in the strictest technical sense" because he also requested the court "safeguard his constitutional rights . . . and liberties . . . which will protect [his] substantive due process as well." We are unpersuaded.

A general reference to Clay's constitutional rights after specifically and unequivocally asking for *stand-by* counsel is *not* a post-waiver request for counsel.[13] Indeed, our Supreme Court has rightly held, there is "no right to hybrid representation."[14] This is because asserting "the right to be represented by counsel is considered a waiver of the Sixth Amendment right of self-representation."[15] And here, in the motion at issue, Clay unequivocally requested standby counsel—*not* for an attorney to represent him.

Clay also maintains he asserted his right to counsel during a November 2020 pre-trial hearing regarding his motion for a continuance. But while Clay claims to

---

[13] Clay does not allege he ever clearly invoked his Sixth Amendment right to counsel but merely that is unclear whether he did so. And he provides no legal authority suggesting a trial court, in its discretion, is required to consider a post-waiver request for counsel that is unclear or "convoluted."

[14] *Johnson v. State*, 315 Ga. 876, 879 (2)(a) (885 SE2d 725) (2023). See also supra note 12.

[15] *Johnson*, 315 Ga. at 879 (2)(a).

quote statements made during this hearing, he cites only to pages in the transcript of the February 2020 *Faretta* hearing that are not relevant to his argument.[16] Needless to say, it is not our job to "cull the record on behalf of a party in search of instances of error."[17] So, because Clay has not established that he ever invoked his right to be represented by counsel after he admittedly waived that right during the *Faretta* hearing, the trial court did *not* abuse its discretion when it (understandably) did not inquire about or consider a request for counsel that never actually happened.

[16] As to the November 2020 hearing, Clay contends he asked if he had the right to appeal, and the trial court responded that he did have that right but he would still need to confer with counsel. Clay allegedly responded, "I've put in a[n] application for counsel . . . ." The State claims this statement was not a request for counsel in *this* case because it was made during a discussion that "centered around" Clay's ability to appeal a prior guilty plea in another case. In any event, Clay concedes it is unclear which application he was referencing, especially because "significant portions of the surrounding transcript are deemed 'unintelligible.'" In any event, Clay referencing an application he had already submitted requesting counsel in an unspecified case does not equate to a clear post-waiver request for counsel during the motions hearing at issue.

[17] *Fleming v. Advanced Stores Co.*, 301 Ga. App. 734, 735 (688 SE2d 414) (2009) (punctuation omitted). See *Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747 (519 SE2d 925) (1999) ("It is not the function of appellate judges to engage in the insipid search for support of alleged error without citation to relevant parts of the record." (quotation marks omitted)); Ct. App. R. 2(d)(1)(i) ("Each enumerated error shall be supported in the brief by specific reference to the *record or transcript*. In the absence of a *specific* reference, the Court *will not search for and may not consider that enumeration.*" (emphasis supplied)).

2. Next, Clay argues the trial court erred in failing to *sua sponte* instruct the jury on his sole affirmative defense of justification. This claim also fails.

For a requested jury instruction to be warranted, it must be "legal, apt, and precisely adjusted to some principle involved in the case."[18] More precisely, the only requirement regarding jury charges is that they are "correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence."[19] And to authorize a jury instruction on a subject, there need only be "slight evidence supporting the theory of the charge."[20] Jury charges, then, must be "adjusted to the evidence in the case."[21]

---

[18] *Harrison v. State*, 310 Ga. 862, 866(2) (855 SE2d 546) (2021) (punctuation omitted). Accord *Barron v. State*, 297 Ga. 706, 708(2) (777 SE2d 435) (2015).

[19] *Mulkey v. State*, 366 Ga. App. 427, 433–34(2) (883 SE2d 173) (2023) (quotation marks omitted). Accord *Hines v. State*, 350 Ga. App. 752, 759(2) (830 SE2d 380) (2019).

[20] *Jones v. State*, 287 Ga. 770, 771(2) (700 SE2d 350) (2010) (punctuation omitted). Accord *Durden v. State*, 327 Ga. App. 173, 179(6) (755 SE2d 909) (2014); *Hughes v. State*, 323 Ga. App. 4, 7(2) (746 SE2d 648) (2013).

[21] *Millen v. State*, 267 Ga. App. 879, 881(2)(a)(i) (600 SE2d 604) (2004). See *Nations v. State*, 345 Ga. App. 92, 100(3) (812 SE2d 346) (2018) ("It is axiomatic that a jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law." (quotation marks omitted)); *Reid v. State*, 341 Ga. App. 604, 613(5)(a) (802 SE2d 42) (2017) (same).

Here, Clay did not request or object to the trial court failing to give the jury instruction at issue, which he concedes on appeal. As a result, we review this claim for plain error only.[22] In doing so, there are four prongs to consider:

> First, there must be an error or defect—some sort of a deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[23]

---

[22] See OCGA § 17-8-58(b) ("Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section."). See, e.g., *Roundtree*, 358 Ga. App. at 145(2) (reviewing a challenge to a jury charge for plain error only the for plain error only because the appellant failed to challenge the charge at issue below).

[23] *State v. Kelly*, 290 Ga. 29, 32(2)(a) (718 SE2d 232) (2011) (quoting *Puckett v. United States*, 556 U.S. 129(II)(a) (29 SCt 1423, 173 LE2d 266) (2009)). See *Roundtree*, 358 Ga. App. at 145–46(2) ("[R]eversal based on plain error is authorized only if the instruction was erroneous, the error was obvious, the instruction likely

Satisfying all four of these prongs is, of course, "difficult, as it should be."[24]

Again, Clay argues the trial court erred by failing to *sua sponte* instruct the jury on his sole affirmative defense of justification. And under OCGA § 16-3-20,

> [t]he fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed . . . [w]hen the person's conduct is justified for any other reason under the laws of this state . . . or [i]n all other instances which stand upon the same footing of reason and justice as those enumerated in this article.[25]

Importantly, when a defendant claims justification, he "admits that he intended to engage in the conduct which constitutes the crime but argues that under the circumstances he was justified in so acting and that he therefore lacked the requisite criminal intent."[26]

---

affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings."(quotation marks omitted)).

[24] *Kelly*, 290 Ga. at 33(2)(a) (quotation marks omitted). Accord *Roundtree*, 358 Ga. App. at 146 (2).

[25] OCGA § 16-3-20(5)-(6).

[26] *Jackson v. State*, 329 Ga. App. 240, 241–42 (764 SE2d 569) (2014).

Here, the only evidence Clay references to justify residing at 211 Everett is a letter from a Muscogee County Superior Court judge to the Muscogee County Sheriff, noting that (1) Clay was in his custody; (2) she assessed his bond at $5,000; and (3) she requested Clay be released. As a special condition of his bond, the judge noted that, "[t]he defendant shall reside at 211 Everett Street in Vidalia, Georgia[,] pending resolution of this matter." And during his closing argument, Clay stated, "I followed what I was told to do by the [c]ourts, and the [j]udge told me that it was fine that I lived at that address."

In Georgia, a trial court does not err in failing to charge the jury "without request on an affirmative defense unless it is the defendant's sole defense."[27] And at trial, justification was not Clay's *sole* defense. Instead, during his closing argument, Clay told the jury that—although he believed he had permission to live at 211 Everett—when it "came time for [him] to go to the new address that [he] gave [Lieutenant] Banks, . . . [he] did both times." So, even if Clay were justified in living at 211 Everett, he also maintained that he still moved to a compliant address when he

---

[27] *Strickland v. State*, 267 Ga. App. 610, 611 (600 SE2d 693) (2004) (punctuation omitted). Accord *Taylor v. State*, 248 Ga. App. 235, 237(1) (546 SE2d 20) (2001).

was directed to do so. Clay also challenged the validity of his 2007 guilty plea resulting in his status as a sex offender, arguing the plea was not signed by the district attorney and it should have "never [taken] place." Finally, Clay suggested that his sex-offender restrictions did not bar him from living near a splash pad because it was a business; and in any event, he never went to or loitered near the premises. Given the foregoing, the trial court did not err in failing to *sua sponte* instruct the jury on the affirmative defense of justification because that was not Clay's *sole* defense at trial.[28]

For all these reasons, we affirm Clay's convictions.

*Judgment affirmed. Mercier, J., and Senior Judge C. Andrew Fuller, concur.*

---

[28] See *Leslie v. State*, 341 Ga. App. 731, 738(3)(b) (802 SE2d 674) (2017) (holding trial court did not err in failing to *sua sponte* instruct the jury on self defense when, *inter alia*, it was not the defendant's sole defense); *Taul v. State*, 290 Ga. App. 288, 290(3) (659 SE2d 646) (2008) (holding trial court did not err in failing to *sua sponte* charge the jury on the affirmative defense of justification because it was not the defendant's sole defense); *Taylor*, 248 Ga. App. at 237(1) (holding the trial court did not err in failing to *sua sponte* instruct the jury on the affirmative defense of accident because evidence also supported a defense of justification).